Jessica Ruth Lobis Buckwalter, Esq. (State Bar No. 199200)
LEWIS BAACH KAUMFANN MIDDLEMIISS PLLC
1050 K Street NW, Suite 400
Washington, DC 20001
Telephone: (202) 833-8900
Email: jessica.buckwalter@LBKMlaw.com

*Attorneys for Plaintiff EQIBank Limited*

**FILED**
**Jun 29, 2026**
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SEALED

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

REDACTED

EQIBank Limited,

*Plaintiff,*

v.

United States of America,

*Defendant.*

No. 2:26-mc-0208 DAD CKD

**DECLARATION OF CHRISTOPHER BURKE IN SUPPORT OF MOTION FOR RETURN OF PROPERTY PURSUANT TO RULE OF CRIMINAL PROCEDURE 41(g)**

I, Christopher Burke, hereby declare:

1. I am over 18 years of age and currently a Director of EQIBank Limited ("EQIBank" or the "Bank"). I am a dual citizen of the United Kingdom and Canada, and a resident of the Cayman Islands since 2005. I make this declaration based upon my personal observations and conversations with the government and a review of documents and correspondence made in the ordinary course of the business of the Bank.

2. I previously served as an investment analyst with a Cayman-based Fund of Hedge Funds from 2005 to 2019.

3. I co-founded EQIBank along with Jason Blick in 2016, as a Cayman Islands entity.

4. EQIBank obtained its banking license in the Commonwealth of Dominica ("Dominica") in August 2018, at which point I became a director of the Bank. I was employed full time at the Bank beginning in approximately January 2019.

5. Over the course of the past seven years my roles have included: developing correspondent relationships, FATCA/CRS reporting, Chief Investment Officer obligations, overseeing day-to-day operations as Chief Operating Officer, supporting the Chief Compliance Officer in developing a compliance framework, supporting EQIBank's Dominica-based General Manager in adhering to regulatory changes, and supporting the Chief Financial Officer in budgeting, projections, and financial reporting.

6. EQIBank began taking deposits in 2019 and is a global digital bank and financial services organization for businesses, corporations, and high-net-worth individuals (https://eqibank.com/).

7. The Bank is located and regulated in the Commonwealth of Dominica ("Dominica") and is regulated by the Financial Services Unit ("FSU") of Dominica.

8. As a result of a phenomenon called "de-risking" (where U.S. based banks often sever ties with non-U.S. financial institutions for reasons unrelated to the specific non-U.S. financial institution), the Bank has often pursued multiple U.S. banking relationships, either directly with U.S. banks or through intermediary money service businesses ("MSBs").

9. In 2024, EQIBank began a commercial relationship with Capstone Limited

("Capstone"), a money services business based in Montana.

10. In dealings with Capstone, the Bank was led to believe by Capstone personnel that it was properly registered and maintained banking relationships with multiple U.S. banking institutions.

11. The funds the Bank provided to Capstone consisted largely of funds ultimately belonging to the Bank's depositors, i.e., depository funds.

12. Through a transaction disclosed to the FSU, Capstone holds the Bank's regulatory capital, i.e., the minimum amount of capital a bank must hold by law as mandated by the FSU. The amount is $1 million.

13. In order for the Bank to see precisely where Capstone held the Bank's money at various U.S. financial institutions, Capstone provided a web-based portal (the "Portal") through which the Bank's employees could log into the Portal, and see the amount of funds held by Capstone at various banks for the benefit of Capstone and, ultimately, for the benefit of the Bank.

14. Beginning on approximately April 2, 2026, without any prior notice to the Bank, the Bank became aware, largely by notifications from Capstone, that the Bank's funds held by Capstone were seized by the banks at the direction of the government.

15. I understand that the U.S. government subsequently obtained formal seizure orders.

16. To date, the government appears to have seized the following accounts for the amounts noted (the "Seized Funds"):

a. Wells Fargo Bank NA, Account # [redacted]7500, USD 1,861,106.49
b. Wells Fargo Securities LLC, Account # [redacted]8863, USD 79,109,828.17
c. JPMorgan Chase, Account # [redacted]6970, USD 9,491,039.38
d. Barclays Bank, Account # [redacted]0622, EUR 411,117.14
e. ClearBank, Account # [redacted]0839, GBP 370,834.47

17. While the Seized Funds are held in Capstone accounts, the funds in the seized accounts were held by Capstone for the benefit of the Bank.

18. The government has provided to the Bank copies of two warrants associated with the Seized Funds. Attached hereto as Exhibit A is a copy of the warrant corresponding to Wells Fargo

Bank NA, Account # [redacted]7500, USD 1,861,106.49, and attached hereto as Exhibit B is a copy of the warrant corresponding to Wells Fargo Securities LLC, Account # [redacted]8863, USD 79,109,828.17. To date the Bank has not received copies of other warrants associated with the seized funds.

19. The Seized Funds represent roughly 80% of the Bank's financial assets. The Bank currently faces a liquidity crisis and cannot operate much longer without access to at least some portion of these funds.

20. Because the Bank retains approximately 20% of its assets in other accounts, it is servicing clients using those funds, but the Bank is being hampered significantly in its ability to serve its customers. As a result of the limited funds accessible to it, the Bank takes longer to do things like process wire transfers for its clients (taking 7-10 days to process a wire instead of 2-3 days on average). As a result, some clients of the bank have stopped using the bank for such business activities, further imperiling its ability to operate. The bank faces a severe liquidity crisis as a result of the government's actions.

21. Immediately upon being notified of the seizure, I and other Bank officials reached out to the Department of Justice ("DOJ") and an initial call with the DOJ took place on Thursday, April 16, 2026. The Bank's officials attended the call with the DOJ officials, without U.S. counsel, for approximately three hours in an attempt to demonstrate to the DOJ that the Bank intended to be as transparent as possible with the government about its relationship with Capstone.

22. In one disclosure, the Bank identified additional banks where Capstone maintained accounts, and to which the Bank had directed additional funds. Shortly thereafter, I learned that an additional quantity of funds were seized at those accounts as well.

23. From conversations with Capstone, and reviewing data from the Portal, the Bank is now concerned that Capstone may have misled the Bank as to the amount of funds held for EQIBank at certain banks, such that the Bank cannot be sure of the exact amount of money seized by the government. But from discussions with the government, the number appears to exceed $90 million.

24. The Seized Funds belong to the Bank and represent, with the exception of the $1

million in regulatory capital, its liabilities to its depositors.

25. To provide the maximum information to the DOJ in order to persuade them to release the Seized Funds, the Bank also sought and secured authority from the FSU to provide information to the DOJ regarding its customers and the ultimate source of the funds held in the seized accounts. A copy of the FSU's June 5, 2026 letter authorizing the Bank to provide information to the DOJ is attached hereto as Exhibit C.

26. Although I am not specifically aware of the reasons why the government continues to refuse to release the Seized Funds, we understand that one possible concern may be whether EQIBank's position with Capstone was transparent to Capstone's U.S. banking partners (including Wells Fargo). However, any suggestion that EQIBank wanted to shield its identity from U.S. banking entities would be incorrect, as the Bank has held banking relationships with U.S. banks in the past and currently holds relationships with U.S. banks – both directly with such banks or through MSB intermediaries where EQIBank's relationship is transparent to the U.S. bank.

27. The following are other banking relationships that EQIBank has held in the past, or holds currently, where its existence was completely transparent to the ultimate U.S. banking entity, because EQIBank's relationship was either directly with the U.S. bank or its existence was transparent through whatever MSB EQIBank was using to connect with the U.S. bank:

a. Zenus Bank (direct);

b. Slovak Savings Bank (through XProwire Limited);

c. Alior Bank (through Payholding International);

d. DBS Bank (through Clarency Singapore Pte); and

e. Community Federal Savings Bank (through Harbor Hills).

28. The Bank sought, and obtained from the FSU, authority to share information with the government related to the government's investigation, including the names of the Bank's clients and relevant transactional information.

29. On June 5, 2026, the FSU provided a letter to the Bank indicating that the Bank was being placed on enhanced supervision because of the seizure of funds.. *See* Exhibit C. This is a preliminary step for the regulator to prepare to take over and liquidate the Bank if it determines that

the Bank cannot operate and serve its depositors, which it ultimately cannot do if the funds are not released.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 23, 2026 at WEST BAY, CAYMAN ISLANDS.

Christopher Burke
Director of EQIBank Limited

# EXHIBIT A

# United States District Court

**EASTERN** District of **CALIFORNIA**

In the Matter of the Seizure of
*(Briefly describe the property to be seized)*

All funds on deposit in Wells Fargo Bank N.A. account number 9852677500, held in the name of Capstone Limited, up to and including the amount of $1,861,106.49.

**WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE**

CASE NUMBER:

2:26-sw-0464 CKD

SEALED

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the Eastern District of CALIFORNIA be seized as being subject to forfeiture to the United States of America. The property is described as follows:

**All funds on deposit in Wells Fargo Bank N.A. account number 9852677500, held in the name of Capstone Limited, up to and including the amount of $1,861,106.49.**

The property is subject to seizure pursuant to 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property within 14 days in the daytime 6:00 a.m. to 10:00 p.m. You must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to CAROLYN K. DELANEY or Any U.S. Magistrate in the Eastern District of California.

June 1, 2026 at 3:59 pm
Date and Time Issued

Carolyn K. Delaney
*Judge's signature*

Sacramento, California
City and State

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

## RETURN

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of:

Inventory of the property taken:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________________

____________________________
*Executing officer's signature*

____________________________
*Printed name and title*

Subscribed, sworn to telephonically, and returned before me this date.

____________________________
U.S. Judge or Magistrate

____________________________
Date

# EXHIBIT B

# United States District Court

**EASTERN** District of **CALIFORNIA**

In the Matter of the Seizure of
*(Briefly describe the property to be seized)*

All funds on deposit in Wells Fargo Securities LLC account number 1BD68863, held in the name of Capstone Limited, up to and including the amount of $79,109,828.17.

**WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE**

CASE NUMBER: 2:26-sw-0463 CKD

**SEALED**

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the Eastern District of CALIFORNIA be seized as being subject to forfeiture to the United States of America. The property is described as follows:

**All funds on deposit in Wells Fargo Securities LLC account number 1BD68863, held in the name of Capstone Limited, up to and including the amount of $79,109,828.17.**

The property is subject to seizure pursuant to 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property within 14 days in the daytime 6:00 a.m. to 10:00 p.m. You must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to CAROLYN K. DELANEY or Any U.S. Magistrate in the Eastern District of California.

June 1, 2026 at 3:57 pm
Date and Time Issued

Carolyn K. Delaney
*Judge's signature*

Sacramento, California
City and State

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

AO 109 (Rev. 11/13) Warrant to Seize Property Subject to Forfeiture (Page 2)

## RETURN

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of:

Inventory of the property taken:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ______________________

______________________
*Executing officer's signature*

______________________
*Printed name and title*

Subscribed, sworn to telephonically, and returned before me this date.

______________________
U.S. Judge or Magistrate

______________________
Date

# EXHIBIT C

COMMONWEALTH OF DOMINICA
MINISTRY OF FINANCE, ECONOMIC DEVELOPMENT, CLIMATE RESILIENCE AND SOCIAL SECURITY
**Financial Services Unit**

Tel: (767) 266 3514 / 3559
Fax: (767) 448 0054
E-mail: fsu@dominica.gov.dm
Website: www.fsu.gov.dm

5th Floor, Financial Centre
Kennedy Avenue
Roseau
Commonwealth of Dominica

5 June 2026

Mr. Christopher Burke
Director
EQIBank Limited
24 Hillsborough Street, Suite II
Roseau
Commonwealth of Dominica
By email: c.burke@eqibank.com

Dear Mr. Burke,

**Authorisation to Disclose Information to the United States Department of Justice**

The Financial Services Unit acknowledges receipt of your letter dated 5 June 2026 concerning the reported seizure by the United States Department of Justice ("DOJ") of funds held through Capstone Limited, a United States Money Services Business and service provider to EQIBank Limited. We note your representation that the DOJ investigation concerns Capstone Limited and that EQIBank has been advised by its United States counsel that EQIBank is not a target of that investigation. We also note that the DOJ has requested information relating to EQIBank's policies and procedures, as well as information concerning clients of the Bank that utilised Capstone accounts at Wells Fargo and JPMorgan Chase.

The FSU expects EQIBank to cooperate **fully, promptly and transparently** with the DOJ, through its duly appointed legal counsel and in accordance with applicable law, to assist the DOJ's enquiries and to facilitate the lawful return of any funds properly belonging to EQIBank or its customers. Such cooperation is consistent with the public interest, the protection of depositors and clients, the deterrence of financial crime, and the protection and enhancement of Dominica's reputation as a financial services jurisdiction. The FSU's statutory objectives include maintaining public confidence in the financial system, deterring financial crimes, supervising licensees, and promoting mutual assistance and exchange of information with foreign regulatory authorities and relevant international bodies.

Accordingly, the FSU has **no objection in principle** to EQIBank providing information requested by the DOJ, provided that such disclosure is made lawfully, responsibly and on a controlled basis. For the avoidance of doubt, this response should not be interpreted as a blanket authorisation to disclose "any and all" client information without limitation. Disclosure should be limited to

information reasonably required and requested by the DOJ in relation to the Capstone matter, including relevant policies, procedures, transaction records, customer information, due diligence records and supporting documentation connected to the Capstone accounts at Wells Fargo and JPMorgan Chase.

EQIBank is required to ensure that any disclosure is made subject to the following conditions:

1. The request from the DOJ should be documented in writing, or otherwise confirmed in writing by EQIBank's United States counsel, identifying the information requested and the purpose for which it is required.
2. Disclosure should be confined to information relevant to the Capstone matter and should be made through EQIBank's legal counsel or other appropriate formal channel.
3. EQIBank must maintain a complete record of all information disclosed, including copies of all documents provided, dates of disclosure, the requesting authority, and the basis on which disclosure was made.
4. EQIBank must ensure that its Board, senior management, Compliance Officer and legal counsel are fully engaged in the process and that the Bank's response is coordinated, accurate and complete.
5. EQIBank must immediately advise the FSU of any indication that the DOJ's investigation extends beyond Capstone Limited to EQIBank, its directors, officers, employees, customers, agents, affiliates, or any other service provider.
6. EQIBank must ensure continued compliance with its suspicious transaction reporting obligations and must file or update any report with the Financial Intelligence Unit where the facts give rise to knowledge, suspicion, or reasonable grounds for suspicion of money laundering, terrorist financing, fraud, or other financial crime. The Money Laundering (Prevention) Act requires financial institutions to pay attention to complex, unusual or large transactions, unusual patterns of transactions, and transactions without apparent lawful or economic purpose, and to report suspicious transactions promptly to the FIU.
7. EQIBank must take care not to prejudice any investigation or disclose information in a manner that may constitute tipping-off or otherwise compromise law enforcement enquiries.
8. EQIBank must provide the FSU with periodic updates on the status of its engagement with the DOJ, including the status of the seized funds, the amount claimed by EQIBank, the amount claimed on behalf of customers, and the expected timeline for release of funds.

The FSU also notes that Capstone Limited was the entity through which EQIBank states that its Minimum Paid-Up Capital and Reserve Fund were pledged in observance of Directive No. FSU/OB/11/2025, and that EQIBank is taking steps to issue a new pledging form through another licensed and regulated banking partner. This matter is of significant regulatory concern. EQIBank is therefore required to provide, within **seven (7) days** of the date of this letter:

- the total amount of EQIBank funds affected by the seizure;

- the total amount of customer funds affected by the seizure;
- a breakdown of the funds by currency, account, correspondent institution and beneficial owner;
- the proposed replacement pledge arrangement, including the name and regulatory status of the proposed banking partner, account details, eligible assets, signatories, control arrangements and expected completion date.

The Offshore Banking Act requires an offshore bank to conduct its business in a manner consistent with the interests of depositors and the public, maintain required permanent capital, maintain adequate liquidity, maintain proper accounting systems, comply with directions issued by the Unit, and comply with Know Your Customer Guidelines and suspicious transaction reporting requirements. The Act also empowers the Unit to require corrective action where necessary, including where a licensee's capital resources do not comply with statutory requirements.
The FSU expects EQIBank to treat this matter with the highest priority.

The Bank's cooperation with the DOJ must be candid, comprehensive and timely. At the same time, EQIBank must ensure that all disclosures are lawful, proportionate, properly documented and consistent with its continuing obligations under the Laws of Dominica.

Nothing in this letter limits the FSU's right to request further information, conduct an examination, issue directions, impose remedial requirements, or take any other supervisory or enforcement action considered necessary in the circumstances.

Yours sincerely,

**Patrickson Carbon**
Director
Financial Services Unit
Commonwealth of Dominica